**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

          Plaintiff-Respondent,

v.                                   No.     CV 16-646-JAP-GJF
                                                  CR 07-45 JAP

BENNY HURTADO,

          Defendant-Petitioner.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ("PFRD")**

       This matter is before me on Petitioner's Motion to Correct the Sentence Pursuant to 28

U.S.C. § 2255.  Doc. 1[1].  Having reviewed all of the primary (Docs. 1, 4, 6) and supplemental

briefing (Docs. 8, 15), and otherwise being fully advised, I recommend the Motion be denied.[2]

### I.    BACKGROUND

       On December 19, 2006, Petitioner was charged by criminal complaint with robbing the

Bank of America branch at 3101 Carlisle Boulevard NE, in Albuquerque, in violation of 18

U.S.C. § 2113(a).  Cr. Doc. 1.  On January 9, 2007, a federal grand jury returned a one-count

indictment charging him with the same offense.  Cr. Doc. 10.  On March 22, 2007, Petitioner

pleaded guilty to the indictment pursuant to a written plea agreement.  Cr. Docs. 20, 22.

       In the plea agreement, Petitioner acknowledged that the maximum sentence for his

offense included "imprisonment for a period of not more than 20 (twenty) years" and that the

U.S. Sentencing Guidelines (hereafter U.S.S.G.) were advisory only.  Cr. Doc. 22 at 2.  The

---

[1] Citations to "Doc." refer to docket numbers filed in Case No. 16-CV-646-JAP/GJF.  Citations to "Cr. Doc." refer to the companion criminal docket, Case No. 07-CR-45-JAP.  For filings made on both dockets, only the civil docket number is given.
[2] Before issuing this PFRD, I considered whether an evidentiary hearing was necessary, as instructed by Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.  Because this Motion is restricted only to matters of law and its disposition requires no further factual development, I concluded that no evidentiary hearing was necessary.

parties stipulated that Petitioner was entitled to a guideline reduction for acceptance of responsibility. *Id.* at 4. The United States promised not to oppose a sentence at the low end of the adjusted guideline range. *Id.* The plea agreement also featured Petitioner's acknowledgements about the extent of the Court's sentencing discretion:

> 10. The Defendant understands that the above stipulations are not binding on the Court and that whether the Court accepts these stipulations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to deviate from the advisory guideline sentence. The Defendant understands that if the Court does not accept any one or more of the above stipulations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court deviates from the advisory guideline range, the Defendant will not seek to withdraw the plea of guilty. In other words, regardless of any stipulations the parties may enter into, the Defendant's final sentence is solely within the discretion of the Court.

*Id.* at 5.

The only other provision of the plea agreement that is relevant to the instant Motion was the "Factual Basis" admitted by Petitioner:

> On 18 December 2006, the defendant entered the Bank of America, located at 3101 Carlisle Boulevard NE, in Bernalillo County, in Albuquerque, in the State and District of New Mexico. (The bank [sic] of America is a federally insured financial institution.) He approached a teller at the bank and, by intimidation, demanded money. The teller complied in the amount of $634.00 which was handed to the defendant.
>
> The defendant then left the bank and a security guard was directed to follow him. The guard exited the bank and observed the defendant running across the parking lot whereupon a concerned citizen followed the defendant across the street to Savon Cash and Carry Flowers. The defendant ran into the flower shop and hid in the restroom and the concerned citizen told him to remain there until the police arrived.
>
> The Albuquerque Police (APD) SWAT team arrived and extricated the defendant. During the extrication of the defendant, the defendant sustained a facial cut which was treated by the SWAT doctor. In the course of the medical assistance, the defendant confessed to having just robbed the bank and that he had flushed the proceeds of the bank robbery down the flower shop's toilet. He was also identified by the bank's teller as the perpetrator of the bank robbery.

*Id.* at 3-4 (all parentheses in original).[3]

On April 27, 2007, U.S. Probation Officer Teressa Ray Pena disclosed her Presentence Investigation Report (hereafter "PSR").[4]   At ¶ 29, the PSR recommended that the Court find that Petitioner was a career offender under U.S.S.G. § 4B1.1.   In making this recommendation, the PSR emphasized that the instant offense was a "qualifying felony offense" and that Petitioner had two earlier convictions for crimes of violence, referencing his 1992 federal conviction for bank robbery (CR 92-290, D.N.M.) and his 1989 state convictions for robbery (88 CR 46261, 2nd Judicial District Court, NM).   PSR ¶ 29.[5]   In addition to chronicling Petitioner's extensive criminal history in ¶¶ 32-44, the PSR recommended an adjusted offense level of 29, a criminal history category of VI, and a resulting guideline imprisonment range of 151-188 months.   PSR ¶¶ 31, 46, 61.   Petitioner filed no objections to the PSR.   He did, however, submit an explanation of his offense and expression of responsibility, which were memorialized in an addendum to the PSR.

On June 21, 2007, the Court held a sentencing hearing.   Cr. Doc. 24.   A copy of the transcript of that hearing is appended hereto as Attachment 1.   At the outset of the hearing, Petitioner affirmed that all of the statements of fact included in the report were true and correct. Tr. at 2.   The Court thereupon "adopt[ed] as factual findings of the court all of the factual

---

[3] In their briefing, neither party attached the transcript of, nor otherwise meaningfully referred to, the change-of-plea colloquy.   Nonetheless, in preparation for issuing this PFRD, I listened to the audio-recording of the hearing.   Aside from the normal back-and-forth that describes the entry of a guilty plea pursuant to a plea agreement, there was nothing in the colloquy that in any way bears on the issues presented in the instant Motion.   Most specifically, there was no reference to the existence or legal effect of any of Petitioner's prior convictions and no discussion of the possibility of Petitioner being classified (or not) as a career offender under U.S.S.G. § 4B1.1.

[4] Consistent with long-standing practice, the PSR was disclosed to the Court and both parties.   Where relevant, I cite to or quote from the PSR.   Given the sensitive nature of some of the information the PSR contains, however, I have opted not to attach it hereto.

[5] The PSR alleged these convictions were "qualifying felony offenses" in summary fashion, without explaining how they fit within the Sentencing Guidelines' definition of "crime of violence" under § 4B1.2(a).

statements in [the] Presentence Report." *Id.*   Apart from asking the Court to vary from the adjusted guideline range, neither Petitioner nor his counsel objected to any portion of the PSR, whether factual, legal, or otherwise.   Petitioner's counsel acknowledged that there had been no written request for variance submitted prior to the hearing, even though such a request was not precluded by the plea agreement.  *Id.* at 4-5.   The Court sentenced Petitioner to a prison term of 151 months, the bottom of the adjusted guideline range.  *Id.* at 6.   There was no discussion at the hearing about whether, how, or why Petitioner qualified as a career offender under § 4B1.1.

The Court filed its judgment on June 22, 2007.  Cr. Doc. 25.  Having waived his right to appeal, Cr. Doc. 22 at ¶ 12, Petitioner did not appeal his sentence.

The instant Motion is Petitioner's first attempt to collaterally attack his sentence.  He argues that each of the offenses on which his designation as a career offender was based no longer qualify as "crimes of violence" in light of *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*) and *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*).  Doc. 1 at 2.  He contends that the *Johnson II* decision should be applied retroactively to reduce the sentencing guideline range for his 2006 bank robbery offense from 151-188 months to 63-78 months.  *Id.* at 1.

Because of my view that the application of *Johnson II* to the guidelines should not be given retroactive effect, and because both federal bank robbery and New Mexico state robbery remain crimes of violence under U.S.S.G. § 4B1.2(a) irrespective of *Johnson I* or *II*, I recommend denying the Motion.

## II.   ANALYSIS

### A.   Is *Johnson II* Retroactive to Guidelines-Only Cases on Collateral Review?

In *Johnson II*, the Supreme Court held that the residual clause of the definition of "violent

felony" under the Armed Career Criminal Act ("ACCA") is unconstitutionally vague.  135 S. Ct.
at 2563.  Until its demise, the residual clause appeared at the end of 18 U.S.C. § 924(e)(2)(B)(ii),
which read: "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves
conduct that presents a serious potential risk of physical injury to another*[.]"  18 U.S.C. §
924(e)(2)(B)(ii)  (2012)  (emphasis added).   In so holding, the Supreme Court ruled that
individuals could not be subject to the ACCA if any of their three requisite prior convictions
qualified as "violent felonies" only under the invalidated residual clause.  135 S. Ct. at 2563.
Then, in *Welch v. United States*, the Supreme Court announced that *Johnson II* would apply
retroactively to ACCA cases on collateral review, reasoning that *Johnson II* announced a new
substantive rule.  136 S. Ct. 1257, 1264-65 (2016).

    Here, Petitioner was not sentenced as an "armed career criminal" under the ACCA, but
rather a "career offender" under § 4B1.1 of the advisory Sentencing Guidelines.  That provision
considerably increases the offense level for an adult offender being sentenced for a "crime of
violence," as that term is defined in § 4B1.2(a), and who has at least two prior convictions for
qualifying "crimes of violence."[6]  At the time Petitioner was sentenced, § 4B1.2(a) included a
residual clause that – with only a single exception – mirrored the residual clause of the ACCA:
"burglary [of a dwelling], arson, or extortion, involves use of explosives, or otherwise involves
conduct that presents a serious potential risk of physical injury to another[.]"  U.S.S.G. §
4B1.2(a)(2).[7]  While the distinction between an "armed career criminal" and a "career offender"
may matter when considering the continued validity of certain prior convictions, it does not

---

[6] Although not relevant to Petitioner's case, § 4B1.1 also includes in its scope "controlled substance offenses" as qualifying convictions.  *See* U.S.S.G. § 4B1.2(b).
[7] This provision was amended on August 1, 2016.  The amendment deleted the residual clause from the definition of "crime of violence."  Because it is the relevant provision, all citations to U.S.S.G. § 4B1.2(a)(2) refer to the pre-2016 amendment version.

make any difference in analyzing whether *Johnson II* should be applied retroactively to the advisory Sentencing Guidelines.

In order to be entitled to resentencing, Petitioner must still establish that the residual clause of the guideline provision is also unconstitutionally vague, and that his sentence was enhanced pursuant to that clause. In *United States v. Madrid*, 805 F.3d 1204, 1210-11 (10th Cir. 2015), the Tenth Circuit held *on direct appeal* that the residual clause in § 4B1.2 was just as unconstitutionally vague as its ACCA counterpart. The United States does not contest this point.[8] Nonetheless, because Petitioner's motion is a collateral attack on his sentence, he would not be entitled to relief unless such a decision applies retroactively.

The question of retroactivity is governed by the now-familiar framework set out in *Teague v. Lane*, 489 U.S. 288, 309-13 (1989) (plurality opinion). "[A]s a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.'" *Welch*, 136 S. Ct. at 1264 (quoting *Teague*, 489 U.S. at 310). There are two exceptions to this general rule: first, "new substantive rules generally apply retroactively," *id*. (quoting *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004)) (alterations and emphasis omitted); and second, "new 'watershed rules of criminal procedure,' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding,' will also have retroactive effect." *Id*. (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

The threshold question, therefore, is whether the application of *Johnson* to the guidelines

---

[8] Though this issue is resolved for the time being in this Circuit, other courts have concluded otherwise. *See, e.g.*, *United States v. Matchett*, 802 F.3d 1185, 1193-96 (11th Cir. 2015). This issue is before the Supreme Court in *Beckles v. United States* (S. Ct. No. 15-8544). At oral argument, several Justices appeared to express skepticism about whether to hold the guideline provision unconstitutional on vagueness grounds. *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016). It should go without saying that, if the Supreme Court ultimately determines that the guideline provision is *not* void for vagueness, Petitioner's claim fails.

constitutes a new substantive rule or a new procedural rule. "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353. "This includes decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id*. at 351-52 (citations omitted). By contrast, procedural rules "regulate only the manner of determining the defendant's culpability[.]" *Id*. at 353 (emphasis omitted). Thus, rules that alter "the range of permissible methods for determining whether a defendant's conduct is punishable" by "allocating decisionmaking authority" are procedural. *Id*. Procedural rules also do not create a class of persons convicted of conduct that is not lawfully criminalized, "but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise." *Id*. at 352.

Under this framework, the Supreme Court concluded that *Johnson II*'s invalidation of the ACCA's residual clause was a new substantive rule because it "changed the substantive reach of the Armed Career Criminal Act . . . ." *See Welch*, 136 S. Ct. at 1265. As the Court explained,

> Before *Johnson*, the Act applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced 15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the Act and faces at most 10 years in prison. The residual clause is invalid under *Johnson*, so it can no longer mandate or authorize any sentence. *Johnson* establishes, in other words, that even the use of impeccable factfinding procedures could not legitimate a sentence based on that clause.

*Id*. (quotation and citations omitted).

In contrast, the invalidity of a given sentencing guideline provision is not nearly so material, for while it may change an *advisory guideline range*, it will not change the maximum or minimum sentence authorized by statute. Consequently, a sentence imposed – even when

7

predicated upon a guideline provision later held invalid – will never exceed the statutorily authorized sentence for the crime of conviction.  Thus, such a sentence is not unlawful.  *See Sun Bear v. United States*, 644 F.3d 700, 705 (8th Cir. 2011) (en banc) (on collateral review, court upheld 360-month sentence imposed following an erroneous determination that defendant was a career offender pursuant to the sentencing guidelines, concluding such sentence was "not unlawful" because "[a]n unlawful or illegal sentence is one imposed without, or in excess of, statutory authority").  In other words, unlike in *Johnson II*, where the ACCA both imposed a statutory minimum sentence and increased the statutory maximum sentence, the sentence imposed using the problematic guideline provision can indeed be "legitimate[d]" merely by a judge's determination that the sentence was still appropriate.  *Welch*, 136 S. Ct. at 1265; *see United States v. Booker*, 543 U.S. 220, 246 (2005) (sentencing guidelines are advisory).  Therefore, a rule that would apply *Johnson II* to invalidate the U.S.S.G. § 4B1.2(a)(2) residual clause has none of the characteristics of a "substantive" rule change under *Teague*.

After all, the Supreme Court itself has classified errors in calculating the advisory guidelines range as "procedural."  *See, e.g.*, *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).  This characterization is accurate because the calculation of a defendant's offense level is just the first step in a multi-step sentencing procedure.  Importantly, while "a sentence within the applicable Guidelines range is presumptively reasonable[,]" *United States v. Terrell*, 445 F.3d 1261, 1264 (10th Cir. 2006), this presumption is only an appellate presumption, not one that a trial court can or should indulge.  *See Rita v. United States*, 551 U.S. 338, 347–48 (2007); *Gall*, 552 U.S. at 40-41; *Kimbrough v. United States*, 552 U.S. 85, 90–91 (2007).  The sentencing court must assess the statutory factors under 18 U.S.C. § 3553(a) without any presumption in favor of the advisory guideline sentence.

*See Rita*, 551 U.S. at 351; *Gall*, 552 U.S. at 40; *Kimbrough*, 552 U.S. at 90–91.  Consequently, if *Johnson II* now invalidates all enhancements stemming from the § 4B1.2(a)(2) residual clause, that new rule merely alters one non-binding and non-determinative step in the sentencing process.  As such, the new rule is best described as procedural.  *See Hawkins II v. United States*, 724 F.3d 915, 917-18 (7th Cir. 2013) (holding that "errors in applying advisory guidelines are procedural," and opining that a new rule that erroneously sentencing a defendant under current guidelines rather than less punitive guidelines in effect at the time of offense is a violation of the Ex Post Facto Clause would therefore not be applied retroactively under *Teague*).[9]

If the application of *Johnson II* to the guidelines is a procedural rule, it can only be applied retroactively if it constitutes a "watershed" rule of criminal procedure.  *Saffle*, 494 U.S. at 495.  To do so, "the rule must not only improve the accuracy with which defendants are convicted or acquitted, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding."  *United States v. Mora*, 293 F.3d 1213, 1218-19 (10th Cir. 2002) (citation, quotation, and emphasis omitted).  This exception is a narrow one.  *Johnson v. McKune*, 288 F.3d 1187, 1197–98 (10th Cir. 2002).  Watershed rules are on the magnitude of the rule announced in *Gideon v. Wainwright*, 372 U.S. 335 (1963).  *Mora*, 293 F.3d at 1219 (citing *Saffle*, 494 U.S. at 495).

Describing the constitutional heft a procedural rule must have to graduate to "watershed" status is assisted to some extent by pointing to decisions that were held *not* to be of watershed quality.  For example, the Tenth Circuit has held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which upended federal charging practice by holding that any fact that increases the

---

[9] I emphasize that the sentence that Petitioner now seeks to invalidate is one imposed upon him *after* the Supreme Court's decision in *Booker* held the Sentencing Guidelines to be advisory only.  I render no opinion here about whether the retroactivity analysis would be the same for pre-*Booker* sentences imposed under a then-mandatory Sentencing Guidelines regime.

penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, did *not* qualify as a watershed decision.  *See Mora*, 293 F.3d at 1219.  The same is true for *Booker*, even though its seismic effect revolutionized federal sentencing.  S*ee United States v. Bellamy*, 411 F.3d 1182, 1186-88 (10th Cir. 2005) (*Booker* constituted a non-watershed procedural rule under *Teague* analysis).  Compared against *Apprendi* and *Booker*, the application of *Johnson II* to the advisory guidelines is not a watershed procedural rule.[10]

Because the application of *Johnson II* to the guidelines would be a non-watershed procedural rule, it would not have retroactive effect to Petitioner's sentence.  Therefore, I recommend denying the Motion on that ground alone.  If the Court agrees, then the Court need not reach Petitioner's other arguments about whether his prior convictions nonetheless qualify as crimes of violence under the force prong of U.S.S.G. § 4B1.2(a)(1) or because they are enumerated in the commentary to § 4B1.2.  Nonetheless, I continue my analysis in the event the Court disagrees or desires to rule in the alternative on the remaining issues.

**B.  Is the Residual Clause Relevant to Petitioner's Sentence?**

One question that must be answered is whether the residual clause was used *at all* in characterizing Petitioner's federal bank robbery and New Mexico state robbery convictions as "crimes of violence."  After all, if these convictions qualify as "crimes of violence" under the "force" prong of § 4B1.2(a)(1) or because robbery is specifically enumerated in the commentary to § 4B1.2, then the residual clause of § 4B1.2(a)(2) (and, by extension, the *Johnson II* decision) is not relevant.  More ominous for the Petitioner, if his predicate convictions qualified under the force prong or because robbery is specifically enumerated, then *Johnson II* did not endow Petitioner with a new claim of relief and his Motion may well be inexcusably tardy under 28

---

[10] In recommending that the Court hold that *Johnson II* should not be applied retroactively to cases on collateral review, I join the thoughtful opinion of United States Magistrate Judge Gregory Wormuth in *Valdez v. United States*, CV-16-727-JB/GBW (Doc. 10).

U.S.C. § 2255(f) because it was filed well more than a year after it could and should have been.

Unfortunately, the short answer to the question of whether the residual clause applies at all to Petitioner's sentence is that we cannot tell.  As set forth *supra* at 3-4, there was no mention at the plea or sentencing hearing, or in the plea agreement, PSR, or judgment, of exactly how Petitioner's convictions for bank robbery and New Mexico robbery qualified as crimes of violence under § 4B1.2(a).[11]  Now some ten years later, it appears as if all participants in the sentencing process simply assumed that Petitioner was a career offender and his advisory guideline range should reflect the same.  Because of the apparent unanimity on that score, there was no reason for the probation officer, the parties, or the Court to specify the particular legal reason why the convictions qualified as crimes of violence.  Not only does that ambiguity complicate the Court's analysis now, but the Court's job has been made more difficult in the last ten years because of other changes in sentencing law occasioned by the Supreme Court and the Tenth Circuit.  In other words, crimes that perhaps would have qualified under the force prong or as functional equivalents to enumerated crimes back in 2007 may no longer qualify because of the evolution of the categorical/modified-categorical formulae now required of sentencing courts in so many contexts.

To his credit, and understanding the analytical dilemma now facing the Court, Petitioner argues that none of his three predicate convictions qualify as crimes of violence under the force prong.  *See, e.g.*, Doc. 1 at 10-15 (bank robbery) and 18-25 (state robbery).  Petitioner then asks the Court to infer that these convictions could have been classified as crimes of violence only *because of* the residual clause of § 4B1.2(a)(2).  And he discards the inclusion of bank robbery as an enumerated crime in the guideline commentary by contending that the commentary amplifies

---

[11] I am restricting my analysis to Petitioner's two federal bank robbery convictions and his 1989 state robbery convictions because that is as far as the parties went in their briefing.  I do note, however, that Petitioner's criminal history as set forth in his PSR includes other convictions that arguably may still have qualified as crimes of violence.

only the now-invalidated residual clause. *See, e.g., id.* at 15-18. For its part, the Government contends that Petitioner's bank robbery and New Mexico robbery convictions qualify as crimes of violence either under the force prong of § 4B1.2(a)(1) or because robbery is a specifically-enumerated offense in the commentary to § 4B1.2. *See* Doc. 8. I examine first whether federal bank robbery qualifies as a crime of violence irrespective of the residual clause, before turning my attention to the New Mexico state robbery statute.

### C.  Is Federal Bank Robbery a Crime of Violence Irrespective of Residual Clause?

Petitioner argues that bank robbery under 18 U.S.C. § 2113(a) is not categorically a crime of violence because it can be committed merely "by intimidation." He further contends that, no matter how serious, "intimidation" stops short of the "violent force" the Supreme Court has required for crimes to satisfy the force prong since 2010. Doc. 1 at 11 (citing *Johnson I*, 559 U.S. at 140).

In support of his argument, Petitioner cites *United States v. Lajoie*, 942 F.2d 699 (10th Cir. 1991), ostensibly for its recitation of the elements of § 2113(a). Doc. 1 at 11. In attempting to describe the breadth of how the Tenth Circuit has defined the term "by intimidation" under that statute, Petitioner includes this parenthetical excerpt: "intimidation is simply an act by an accused reasonably calculated to put another in fear." *Id.* (citing *Lajoie*, 942 F.2d at 701 n.5). The problem with this excerpt, however, is that it is truncated and stops before the Tenth Circuit did. The full footnote reads as follows:

> Intimidation in the context of 18 U.S.C. § 2113(a) is defined as an act by defendant "reasonably calculated to put another in fear," *United States v. Graham*, 931 F.2d 1442, 1443 (11th Cir. 1991); *United States v. Higdon*, 832 F.2d 312, 315 (5th Cir. 1987), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988), or "conduct and words . . . calculated to create the impression that any resistance or defiance by the [individual] would be met by force." *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991); *see Slater*, 692 F.2d at 109.

12

*Lajoie*, 942 F.2d at 701 n. 5.  In its full context, therefore, this footnote makes clear that the level of intimidation required by § 2113(a) is that which is calculated by the defendant to cause another to be in fear that the defendant will use *physical force* if the victim-teller does not comply with the defendant's demands.   Thus, a taking "by intimidation" under § 2113(a) necessarily would involve the *threat* to use *physical force*, which brings it squarely within the force prong of § 4B1.2(a)(1).  Furthermore, there is no indication in *Lajoie*, nor anywhere else in Tenth Circuit jurisprudence, that the level of physical force a bank teller fears the robber would use if she did not yield to his demands is anything other than the "violent force" the Supreme Court defined in *Johnson I*:  "force capable of causing physical pain or injury to another person," not merely an intentional, unwanted touching.  559 U.S. at 140.

Aside from the fact that *Lajoie* does not afford Petitioner with the refuge he attributes to it, federal law is becoming increasingly replete with decisions that bank robbery committed "by intimidation" remains a crime of violence after *Johnson I* and *Johnson II*.  Although the Tenth Circuit has apparently not yet weighed in on the issue, at least three other circuits have.  *See United States v. McBride*, 826 F.3d 293, 295-96 (6th Cir. 2016); *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016); *United States v. Jenkins*, 2016 WL 3101281, at *4 (11th Cir. June 3, 2016); *see also United States v. Boman*, 810 F.3d 534, 542-43 (8th Cir. 2016) (robbery under 18 U.S.C. § 2111, which must be done "by force and violence, or by intimidation," satisfies the force clause under 18 U.S.C. § 924(e)(2)(B)(i)).[12]

---

[12] A Westlaw search revealed that some 40 different district courts have agreed post-*Johnson I* and *II* that § 2113(a) bank robbery remains a crime of violence.  A sample include *United States v. Holmes*, 2016 WL 6947499 (N.D. Cal. Nov. 28, 2016); *United States v. Cosner*, 2016 WL 5108026 (N.D. Miss. Sept. 20, 2016); *United States v. Enriques*, 2016 WL 4273187 (D. Neb. Aug. 12, 2016); *United States v. Cunningham*, 2016 WL 687902 (N.D. Ill. Feb. 19, 2016); *Daniels v. United States*, 2016 WL 5875003 (E.D. Tenn. Oct. 7, 2016); *Moore v. United States*, 2016 WL 5408882 (S.D. Ohio Sept. 28, 2016); *United States v. Abdul-Samad*, 2016 WL 5118456 (S.D. Cal. Sept. 21, 2016); *Akers v. United States*, 2016 WL 6585285 (W.D.N.C. Nov. 4, 2016); *Chasse v. United States*, 2016 WL 4926154 (D.N.H. Sept. 15, 2016); *Fisher v. United States*, 2016 WL 2609579 (N.D. Ind. May 4, 2016); *Kucinski v. United States*, 2016 WL 4444736 (D.N.H. Aug. 23, 2016); *McGuire v. United States*, 2016 WL 4289189 (E.D. Wis. Aug.

The Sixth Circuit's decision in *McBride* is particularly instructive on the issue of whether

bank robbery "by intimidation" is a crime of violence under the force prong:

> Bank robbery by "force and violence" plainly involves "the use, attempted use, or
> threatened use of physical force." Whether the same is true of bank robbery by
> "intimidation" is a closer question, although not by much. In the context of §
> 2113(a), "intimidation" means "conduct and words . . . calculated to create the
> impression that any resistance or defiance . . . would be met by force." *United
> States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002); *see also* James Lindgren,
> "Blackmail and Extortion," in 1 Encyclopedia of Crime and Justice 115, 115
> (Sanford H. Kadish ed., 1983) ("[R]obbery by intimidation" involves the "threat[
> ] to do *immediate* bodily harm, whereas . . . blackmail or extortion" involves the
> "threat[ ] to do bodily harm *in the future*."). Intimidation concerns whether an
> ordinary person would feel threatened under the circumstances, *Gilmore*, 282
> F.3d at 403, but the prosecution must prove that the defendant possessed "*general
> intent* - that is . . . knowledge" - with respect to taking the property by
> intimidation, *Carter v. United States*, 530 U.S. 255, 268, 120 S. Ct. 2159, 147
> L.Ed.2d 203 (2000). The defendant must at least know that his actions would
> create the impression in an ordinary person that resistance would be met by force.
> A taking by intimidation under § 2113(a) therefore involves the threat to use
> physical force. *See, e.g., United States v. McNeal*, 818 F.3d 141, 153 (4th Cir.
> 2016); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) ("There is no
> 'space' between 'bank robbery' and 'crime of violence'" under the physical-force
> clause of § 4B1.2(a)); *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990).

826 F.3d at 295-96 (italics in original).

The Fourth Circuit sings in chorus:

> A taking "by force and violence" entails the use of physical force. Likewise, a
> taking "by intimidation" involves the threat to use such force. *See, e.g., Jones*,
> 932 F.2d at 625 ("Intimidation means the threat of force."); *Selfa*, 918 F.2d at 751
> (explaining that the intimidation element of § 2113(a) meets "the [guidelines]
> section 4B1.2(1) requirement of a 'threatened use of physical force'"). As the
> Seventh Circuit explained in its *Jones* decision, "[t]here is no 'space' between
> 'bank robbery' and 'crime of violence'" because "violence in the broad sense that
> includes a merely threatened use of force is an element of every bank robbery."
> *See* 932 F.2d at 625.
>
> …
>
> Put succinctly, the reasoning of *Jones, Selfa*, and *Presley* is persuasive. Bank
> robbery under § 2113(a), "by force and violence," requires the use of physical

---

15, 2016). I found not a single case – published or otherwise – that has held federal bank robbery to *not* be a crime
of violence even when committed only "by intimidation."

force.  Bank robbery under § 2113(a), "by intimidation," requires the threatened use of physical force.  Either of those alternatives includes an element that is "the use, attempted use, or threatened use of physical force," and thus bank robbery under § 2113(a) constitutes a crime of violence under the force clause[.]

*McNeal*, 818 F.3d at 153.

Given this unanimity of authority, I recommend that the Court conclude that bank robbery "by intimidation" under 18 U.S.C. § 2113(a) is a crime of violence because it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]"  U.S.S.G. § 4B1.2(a)(1).

Separately and alternatively, I recommend that the Court conclude that bank robbery is a crime of violence under § 4B1.2(a) because it meets the generic definition of robbery as that offense is enumerated in the guideline commentary.  *See* U.S.S.G. § 4B1.2, comment. (n.1) (defining "crime of violence" as including robbery).

When an offense is specifically enumerated as a crime of violence, a court ordinarily compares the elements of the crime of conviction to the generic form of the offense to determine whether the conviction qualifies as a crime of violence.  *See United States v. Castillo*, 811 F.3d 342, 345 (10th Cir. 2015).  Generic robbery is the unlawful taking of property from another person or from the immediate presence of another by force or intimidation.  *See United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010)); *United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008) (explaining that generic robbery "contain[s] at least the elements of misappropriation of property under circumstances involving [immediate] danger to the person"); *Robbery*, BLACK'S LAW DICTIONARY (10th ed. 2014) (stating that robbery is "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation"); *see also United States v. Aguilar-Ramos*, 645 F. App'x 777 (10th Cir. 2016) (unpublished) (citing 67 AM. JUR.

2d, *Robbery* § 26) ("Any force, violence, or threat, no matter how slight, is sufficient to sustain a robbery conviction if it . . . prevents or overcomes resistance to the property's taking or retention.").

The Eleventh Circuit recently examined whether bank robbery by intimidation under § 2113(a) matched the generic definition of robbery as that term is understood in Application Note 1 to U.S.S.G. § 4B1.2:

> The generic definition of robbery is "the taking of property from another person or from the immediate presence of another person by force or intimidation." *United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (quotation marks omitted). Under the generic approach, intimidation is the fear of bodily harm. *Id.* The elements of a § 2113(a) offense are nearly identical to the elements of generic robbery. Both § 2113(a) and generic robbery at a minimum require the taking to be by intimidation, i.e., a perceived threat of bodily harm. Therefore, we conclude that bank robbery, or attempted bank robbery, under § 2113(a), even when perpetrated by means of intimidation, is an enumerated offense that qualifies as a crime of violence under § 4B1.2(a).

*United States v. Jenkins*, 2016 WL 3101281, at *4 (11th Cir. June 3, 2016) (emphasis in original).

For the foregoing reasons, I recommend that the Court conclude that bank robbery by intimidation under § 2113(a) matches the generic definition of robbery. In so doing, the Court necessarily would also conclude that bank robbery by intimidation is a crime of violence as set forth in Application Note 1 to U.S.S.G. § 4B1.2(a). *See also United States v. O'Conner*, 2016 WL 4273199 (D. Kan. Aug. 15, 2016) (finding aiding and abetting Hobbs Act robbery to be crime of violence under Application Note 1 to § 4B1.2).

### D.  Is NM State Robbery a Crime of Violence Irrespective of the Residual Clause?

The parties agree that Petitioner was twice convicted of robbery in violation of N.M.S.A. § 30-16-2, which provides:

> Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, *by use or threatened use of force or violence.*
>
> Whoever commits robbery is guilty of a third degree felony.
>
> Whoever commits robbery while armed with a deadly weapon is, for the first offense, guilty of a second degree felony and, for second and subsequent offenses, is guilty of a first degree felony.

N.M.S.A. § 30-16-2 (1978) (emphasis added). The parties further agree that Petitioner's two 1989 robbery convictions as set forth in ¶¶ 41-42 of the PSR were for unarmed or simple robbery.

Petitioner argues that his 1989 convictions for New Mexico state robbery do not qualify as crimes of violence under § 4B1.2(a). His sole claim – apart, of course, from his argument that the residual clause is invalid and retroactively so – is that New Mexico's robbery statute does not satisfy the force prong of § 4B1.2(a)(1) because that crime can be committed with a level of force beneath the "violent physical force" required by *Johnson I. See* Doc. 1 at 18-19. He asserts that one can be convicted of violating our state robbery statute with only the "slightest physical contact," which he emphasizes is well beneath the bar set by *Johnson I. Id.* at 19.

### 1. Does New Mexico State Robbery Satisfy the Force Clause?

To determine whether a prior conviction qualifies as a crime of violence under § 4B1.2(a)(1), a court must apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts. *See Madrid*, 805 F.3d at 1207 (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013)). Whether a statute "has as an element the use, attempted use, or threatened use of physical force against the person of another" requires an examination of both federal and New Mexico state law. *See United States v. Harris*, No. 16-1237, 2017 WL 34458, at *6 (10th Cir. Jan. 4, 2017). "Federal law defines the meaning of the

phrase 'use, attempted use, or threatened use of physical force'" and "state law defines the substantive elements of the crime of conviction." *Id.* (citing *Johnson I*, 559 U.S. at 138 and *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004)).

In holding that the Colorado state robbery statute qualified under the force clause as a violent felony under the ACCA, the Tenth Circuit clarified what a federal court must do when examining a state statute for the same or similar reasons:

> A two-step inquiry resolves whether Colorado's robbery statute requires physical force as that term is used in the ACCA:  we must identify the minimum "force" required by Colorado law for the crime of robbery and then determine if *that* force categorically fits the definition of physical force.  *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) ("Because we examine what the state conviction necessarily involved . . . we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, *and then* determine whether even *those acts* are encompassed by the generic federal offense." (alterations in original) (emphasis added)).  The Supreme Court has instructed us that in construing the minimum culpable conduct, such conduct only includes that in which there is a "realistic probability, not a theoretical possibility" the state statute would apply.  *Id.* at 1685 (citation omitted).  Decisions from the state supreme court best indicate a "realistic probability," supplemented by decisions from the intermediate-appellate courts.

*Harris*, 2017 WL 34458, at *7 (emphasis in original).

In contending that the New Mexico state robbery statute does not satisfy the force clause of § 4B1.2(a), Petitioner zeroes in on that clause's inclusion of the phrase "physical force."  Doc. 1 at 18-26.  As commanded by *Harris*, I must first ascertain how federal law defines that term, a task made substantially easier by the *Harris* decision itself.  Relying heavily on *Johnson I*, the Tenth Circuit held that "physical force means violent force, or force capable of causing physical pain or injury to another person[.]"  *Harris*, 2017 WL 34458, at *11.  The Tenth Circuit emphasized, however, that the Supreme Court contemplated as an example of such force "a slap in the face."  *Id.* at 10 (quoting *Johnson I*, 559 U.S. at 143).  The Tenth Circuit also cited with favor Justice Scalia's concurring opinion in *United States v. Castleman*, 134 S. Ct. 1405, 1421

(2014), in which he stated that "force 'capable of causing physical pain or injury' includes such conduct as '[h]itting, slapping, shoving, grabbing, pinching, biting, [and] hair pulling.'" *Id.*

With that understanding of the federal definition of "physical force," I turn next to the crux of Petitioner's complaint: whether the level of force required to be convicted of New Mexico state robbery matches or exceeds the baseline level established by *Johnson I* and *Harris*. To begin, it is worth emphasizing that New Mexico courts have made clear that the "use or threatened use of force" must be against the *person* of another to satisfy this element. *See, e.g.*, *State v. Bernal*, 146 P.3d 289, 296 (N.M. 2006); *State v. Curley*, 939 P.2d 1103, 1106 (N.M. Ct. App. 1997). The New Mexico Supreme Court has instructed that, in contrast to the statute criminalizing larceny, the robbery statute "is clearly designed to protect citizens from violence . . . [r]obbery is not merely a property crime, but a crime against a person." *Bernal*, 146 P.3d at 296. The New Mexico Court of Appeals has similarly explained that the requirement that property be taken with sufficient force "so as to overcome the resistance of attachment" before larceny is elevated to robbery is intended to reflect "the increased danger to the person that robbery involves over the offense of larceny." *Curley*, 939 P.2d at 1106.

But is the amount of force required under the New Mexico robbery statute categorically sufficient to meet the standard outlined in *Johnson I* and *Harris*? In other words, does New Mexico require a person before being convicted of robbery to have used, attempted to use, or threatened force that is "capable of causing physical pain or injury to another person?" For the following reasons, I conclude the answers to both questions are in the affirmative.[13]

---

[13] I am aware that the United States Attorney's Office in this district has conceded in certain other cases that New Mexico robbery is no longer a "violent felony" under the ACCA after *Johnson II*. *See, e.g., United States v. Garcia*, CV-16-240-JB/LAM, Doc. 17 at 1 ("The central basis behind this concession is that New Mexico's robbery can be committed without force causing physical pain or injury."); *United States v. Sanchez*, CV-16-659-JAP/GBW, Doc. 47 at 1-3; *United States v. Tafoya*, CV-16-647-LH/CG, Doc. 42 at 2-3. In so doing, that office is conceding that New Mexico robbery does not satisfy the force clause of 18 U.S.C. § 924(e)(2)(B)(i). That concession, however, is not binding on me or the Court. Furthermore, I disagree with the United States' conclusion and the analysis on

The state law jurisprudence regarding the statute instructs that "[t]he use of force, violence, or intimidation is an essential element of robbery." *State v. Lewis*, 867 P.2d 1231, 1233 (N.M. Ct. App. 1993). "The force or intimidation is the gist of the offense." *State v. Sanchez*, 430 P.2d 781, 782 (N.M. Ct. App. 1967). The phrase "or violence," as used in the statute, "do[es] not substantively state an alternative means of committing the offense[.]" *Curley*, 939 P.2d at 1104. State courts in New Mexico thus use the terms "force" and "violence" interchangeably when discussing whether the force element of the statute has been met by an offense. *See id.*

The force or fear required under the state robbery statute "must be the moving cause inducing the victim to part unwillingly with his property. It must overcome the victim's resistance. It must compel one to part with his property. It must be such that the power of the owner to retain his property is overcome." *Sanchez*, 430 P.2d at 782 (internal citations omitted). The "use of force to retain property or to facilitate escape does *not* satisfy the force element necessary for the crime of robbery." *Lewis*, 867 P.2d at 1233-34 (emphasis added). Rather, "the use or threatened use of force must be the factor by which the property is removed from the victim's possession." *Id.* at 1233. For example, the *Curley* court concluded that the defendant was entitled to an instruction on the lesser included offense of larceny even though he shoved the victim before taking her purse, because the jury could have found that the shove was accidental, inadvertent, and wholly independent of the taking, and that the defendant thus "took the purse by

---

which it is based. After all, with reference to the concession quoted in *Garcia*, above, the United States Supreme Court did not require "force *causing* physical pain or injury," but rather "force *capable of causing* physical pain or injury." *Johnson I*, 559 U.S. at 140 (emphasis added). It is enough to say that I read *Johnson I* and the relevant New Mexico state cases differently and perhaps less expansively than the United States Attorney does. What is more, at least in this case, the United States pointedly has *not* conceded that New Mexico robbery fails to satisfy the definition of "crime of violence" under § 4B1.2. *See* Doc. 8 at 2-3 (arguing that Petitioner's two state robbery convictions satisfy force clause and are encompassed by inclusion of robbery in guideline commentary).

surprise from a person who was not resisting, and not by force necessary to overcome any resistance." 939 P.2d at 1107.

Whether the force employed during a larceny is sufficient to elevate the offense to robbery requires an evaluation by the fact-finder. *See State v. Clokey*, 553 P.2d 1260, 1260 (N.M. 1976) ("The question of whether or not the snatching of the purse from the victim was accompanied by sufficient force to constitute robbery is a factual determination, within the province of the jury's discretion."). *De minimis* force will not sustain a robbery conviction. *See Curley*, 939 P.2d at 1105 ("[W]hen no more force is used than would be necessary to remove property from a person who does not resist, then the offense is larceny, and not robbery."). Mere "touching or jostling," or even the more overtly forceful act of pressing a fist into the victim's back while stealing his property, are all insufficient to establish the force element; such circumstances support only the lesser conviction of larceny. *Sanchez*, 430 P.2d at 782.[14]

In older cases, New Mexico courts have said "in dictum that even a slight amount of force, such as jostling the victim or snatching away the property is sufficient" force for a robbery conviction. *Curley*, 939 P.2d at 1104 (citing *State v. Martinez*, 513 P.2d 402, 403 (N.M. Ct.

---

[14] In support of his argument that New Mexico robbery can be committed with something less than *Johnson I*-level force, Petitioner primarily relies on a series of New Mexico Court of Appeals decisions. The *Sanchez* court equated the facts before it "to those pickpocket or purse snatching cases, where even though there was some touching or jostling involved as the property was taken, the crime was *larceny* because of the absence of force or fear." 430 P.2d at 782 (emphasis added). Thus, fairly read, *Sanchez* makes clear that our state robbery statute is *not* violated when the thief engages, as Petitioner suggests, in the "slightest physical contact." Doc. 1 at 19. For its part, the single-page decision in *State v. Martinez* stands for the altogether unremarkable proposition that an offender who uses sufficient force to rip the pocket of a victim's jacket and knock him against a sidewalk railing has used force sufficient to sustain a robbery conviction. 513 P.2d at 402. Equally unremarkable is *State v. Segura*, which merely confirmed that one who grabs a purse with such force as to cause the victim who was holding onto it tightly to nonetheless fall and let go of the purse has used force sufficient to commit robbery. 472 P.2d 387, 387-88 (N.M. Ct. App. 1970). *State v. Verdugo*, 164 P.3d 966 (N.M. Ct. App. 2007) does not change this analysis either, because that case featured Verdugo using sufficient force to overcome the resistance of the victim who "struggled to retain control of [her] purse [until] the strap eventually broke." 164 P.3d at 974. And in *State v. Pitts*, 700 P.2d 650 (N.M. Ct. App. 1985), a jail inmate used sufficient force to grab an adult correctional officer and lock her in a cell before stealing money that had been in the officer's immediate possession. 700 P.2d at 653. There is nothing in my view about the *actual holdings* of these cases that comes close to establishing that there is a "realistic probability" that one could be convicted of New Mexico state robbery on a showing of actual or threatened force less than that which is "capable of causing physical pain or injury to another person." *Harris*, No. 16-1237 at 11.

App. 1973)).   However, the *Curley* opinion makes clear that the property must be taken with sufficient force to "overcome the resistance of attachment."   *Id*. at 1105-06.   Importantly, the *Curley* court explained that the distinction between robbery and larceny does not hinge on "[s]ubtle differences in the amount of force used, alone[.]"   Rather, the court explained that "if we remember that the reason for the distinction is the increased danger to the person" accompanying the crime of robbery, "then an increase in force that makes the victim aware that her body is resisting could lead to the dangers that the crime of robbery was designed to alleviate[,]" such as violent altercations or confrontations.  *Curley*, 939 P.2d at 1103.

Consequently, under New Mexico law, the essential purpose of the robbery statute is to prevent the possibility of dangerous and violent altercations that arise when enough force is used to create an occasion for confrontation.   As the Supreme Court of New Mexico has explained, "robbery is a crime designed to punish the use of violence" and "to protect citizens from violence." *Bernal*, 146 P.3d at 296.[15]

The analysis set forth by the *Curley* court regarding the force element of New Mexico robbery directly parallels the rationale in *Ramon Silva*, in which the Tenth Circuit Court of Appeals held that "apprehension causing" aggravated assault is categorically a "violent felony" under the "threatened use of force" prong of the ACCA force clause.  608 F.3d at 670-71.  There, the court reasoned that the conduct proscribed by the offense "threatens the use of '*violent*' force because by committing such an act, the aggressor communicates to his victim that he will potentially use '*violent* force' against the victim in the near-future," and because such conduct "*always has the potential*" to lead to violent force.  *Id.* (emphasis added).  Therefore, the force

---

[15] Petitioner also relies to some extent on the viewpoints offered by the drafting committee of the New Mexico Uniform Jury Instructions.  *See* Doc. 1 at 20.  I do not find the commentary itself to be persuasive, nor has Petitioner cited any authority that such a committee's view on the law carries any additional significance above and beyond that provided by the cases it cites.

required in New Mexico to establish the crime of simple robbery must at the very least satisfy the "threatened use" prong of the § 4B1.2(a) force clause, given that state law has established that the elements of the statute require actual or potential violent force.  It thus qualifies as a crime of violence under that guideline.[16]  *See also United States v. Baker*, Magistrate Judge's Proposed Findings and Recommended Disposition, Doc. 9 at 6-16 in 16-cv-715 PJK/GBW (D.N.M. Dec. 15, 2016) (concluding that New Mexico simple robbery qualifies as a predicate conviction under the force clause of the ACCA); *Contreras v. United States*, Magistrate Judge's Proposed Findings and Recommended Disposition, Doc. 12 at 8-18 in 16-cv-0671 RB/SMV (D.N.M. Dec. 6, 2016) (concluding that New Mexico simple robbery qualifies as a predicate conviction under the force clause of § 4B1.2(a)).[17]

### 2. Does "Robbery" under U.S.S.G. Commentary Survive *Johnson II* and Encompass the New Mexico State Robbery Statute?

Although I have recommended that the Court hold that New Mexico robbery satisfies the force clause of § 4B1.2(a)(1), I further recommend that the Court alternatively hold that New

---

[16] Notably, New Mexico's robbery statute is narrower than the uniform generic definition of robbery.  New Mexico still requires that a defendant "must use force before or during the taking itself" in order to commit robbery.  *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1235 (10th Cir. 2009).  This requirement is a relic of the strict common law to which only five states, including New Mexico, still subscribe.  *Id*.  In contrast, generic robbery incorporates the more lenient "continuing offense theory" - an act of force or violence committed to facilitate escape suffices to satisfy the force element of robbery.  *See id*. at 1234-37.  Therefore, if generic robbery remains within the force clause of § 4B1.2(a), so should New Mexico's narrower version.

[17] Although its decision predates *Johnson I*, the Tenth Circuit has reached the same conclusion.  *See United States v. Lujan*, 9 F.3d 890, 891-92 (10th Cir. 1993).  In *Lujan*, the Court of Appeals confronted a defendant convicted of manslaughter in California and robbery in New Mexico, under the same statute at issue here.  *Id*. at 891.  In holding that both convictions constitute "violent felonies" under the ACCA, the court explained: "[The California manslaughter statute] has 'as an element the use, attempted use, or threatened use of physical force against the person of another' and thus is a violent felony under the ACCA.  The New Mexico robbery statute also contains the required element of force[.]"  *Id*. at 892 (quoting and italicizing for emphasis the force element of N.M.S.A. § 30-16-2).  Given that the *Lujan* language may rise only to the level of dicta, and given that the panel that decided it had no occasion to compare the New Mexico robbery statute against the definition of "physical force" established in *Johnson I*, I do not consider *Lujan* to be controlling.

Mexico robbery is also a crime of violence because "robbery" is specifically enumerated in the commentary to § 4B1.2.[18]

Under the 2005 version of the Sentencing Guidelines, the commentary accompanying § 4B1.2 stated: "For purposes of this guideline . . . . 'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling." § 4B1.2 cmt. n.1 (emphasis added).[19]

The government argues that Petitioner's prior convictions for robbery under § 30-16-2 qualify as crimes of violence independent of the residual clause, emphasizing that robbery is among the offenses enumerated in the guidelines' commentary. Doc. 8 at 2-3. The government largely bases its argument on Judge Browning's opinion in *United States v. Barela*, CR-15-3550 JB, Doc. 44, which itself relied on the Tenth Circuit's opinion in *Madrid*, 805 F.3d at 1204, to reach the same conclusion. Doc. 8 at 2-3. Drawing on *Barela* and *Madrid*, the government asserts that the commentary accompanying § 4B1.2 enumerates robbery as *per se* a "crime of violence." *Id.* at 3. The government further argues by reference to Judge Browning's decision in *Barela* that New Mexico's robbery statute adheres to the generic definition of robbery. *Id.*

---

[18] Surprisingly, Petitioner did not argue in his opening motion that New Mexico state robbery cannot be saved as a "crime of violence" because of the inclusion of robbery in the commentary to § 4B1.2. No doubt he intended to, for he spent four full pages making that very argument with respect to his two bank robbery convictions. *See* Doc. 1 at 15-18. But his entire attack on his New Mexico robbery convictions is that the statute under which he was convicted permits a level of force beneath the constitutional bar. *See id.* at 18-26. Accordingly, I find that he has waived this argument. Nonetheless, because the analysis required to hold that robbery as enumerated in the commentary still involves determining whether New Mexico state robbery corresponds with the definition of generic robbery, I conduct that analysis *infra* anyway.

[19] I note that § 4B1.2 was amended effective August 1, 2016 to list robbery as a "crime of violence" in the text of the guideline. *See* U.S.S.G. § 4B1.2(a)(2) (2016). The government makes no argument that this amendment impacts the Court's analysis at all; consequently, I note it only in passing.

Therefore, the government concludes, New Mexico robbery is a qualifying crime of violence under the Guidelines. *Id.* at 3-4.

Petitioner challenges this interpretation. While acknowledging that robbery is listed in the commentary to § 4B1.2, Petitioner contends that the offenses enumerated in the commentary do not provide independent bases on which an underlying offense can qualify as a crime of violence. Petitioner emphasizes that "Guideline commentary is only authoritative insofar as it [is] [sic] consistent with the congressionally approved text of the Guidelines itself." Doc. 1 at 15-16 (citing *Stinson v. United States*, 508 U.S. 36, 38, 40-41 (1993)). He further posits that the commentary's reference to robbery "clearly cannot be interpreting or explaining the force clause because robbery does not require the intentional use or threat of violent physical force against another person." *Id.* at 16 (citation omitted).[20] Petitioner further contends that the commentary's inclusion of robbery could only have been relevant to the residual clause, since discarded by *Johnson II* and *Madrid*. *Id.* at 17.

For support for this proposition, Petitioner relies primarily on *United States v. Soto-Rivera*, 811 F.3d 53 (1st Cir. 2016). There, the court held that "in light of the government's concession that *Johnson* invalidates the residual clause in Guidelines § 4B1.2(a)(2), Application Note 1 has become inconsistent with the remaining text of the Guideline itself." *Id.* at 62. But the greater weight of extra-circuit authority seems to go the other way. *See United States v. Jeffries*, 822 F.3d 192 (5th Cir. 2016) (after excising residual clause, holding aggravated assault to be crime of violence because of its enumeration in guideline commentary); *Beckles v. United States*, 616 F. App'x 415 (11th Cir. 2015) (same for possession of sawed-off shotgun). In addition, having issued its decision in January 2016, the *Soto-Rivera* panel could not have

---

[20] I disagree, of course, as I explained in the preceding section in which I established that New Mexico robbery does in fact satisfy the force clause.

benefited from the United States Supreme Court's November 2016 oral argument in *Beckles*. During that argument, one or more of the justices seemed to embrace the notion that the commentary's enumeration of a crime as a crime of violence was in and of itself sufficient to dispose of the appeal.[21]  Absent definitive and controlling law on this issue, I recommend that the Court decline Petitioner's invitation to rely on *Soto-Rivera* to declare an entire application note to be invalid when there are at least equally strong arguments to defend its continued viability.

There is still another reason that the Court should be reluctant to invalidate Application Note 1 to § 4B1.2 in its entirety:  the Tenth Circuit has at least tacitly recognized its continuing viability and the need for sentencing courts to continue to analyze the crimes enumerated therein against their generic counterparts.   In *Madrid*, the Tenth Circuit considered whether the defendant's prior conviction for statutory rape qualified as a crime of violence under the guidelines.  805 F.3d at 1206.  The court instructed that the prior offense would qualify as a crime of violence if: "(1) it 'has as an element the use, attempted use, or threatened use of physical force against the person of another'; [or] (2) it is one of the offenses enumerated in the Guidelines or accompanying commentary as a crime of violence." *Id.* at 1207 (quoting § 4B1.2(a)). The court first concluded that the statute of conviction did not fall under the force clause.  *Id.* at 1207–08.  It then analyzed whether the underlying statutory rape law qualified under one of the crimes enumerated in the commentary to § 4B1.2, "forcible sex offenses."  *Id.* at 1208.  The court ultimately concluded that the Texas law encompasses non-forcible acts and thus is broader than the enumerated offense.  *Id.* at 1208–09.  The court went on to conclude that the underlying offense could not qualify under the residual clause because that clause was unconstitutionally vague following *Johnson*.  *Id.* at 1210.

---

[21] *See* Transcript of Oral Argument at 9-15, *Beckles v. United States* (S. Ct. No. 15-8544) (2016).

That the Tenth Circuit embarked on its comparison of elements *at all* is momentous.  In so doing, the Tenth Circuit set out a rule specifically acknowledging the offenses enumerated in the commentary and conducted a robust analysis—the same analysis that courts deploy in comparing an underlying statute against the offenses enumerated in § 4B1.2(a)(2)—in making its determination.  805 F.3d at 1208–09.  The court gave no indication that a further level of analysis would be required.  It noted simply that "[b]ecause the statute under which Madrid was convicted does not necessarily require force or coercion, we hold that Madrid's conviction does not qualify as a forcible sex offense."  *Id.* at 1210.  The only logical conclusion to be drawn from the *Madrid* court's analysis is the one Judge Browning drew in *Barela*: underlying convictions may qualify as crimes of violence based on the crimes enumerated in the commentary to § 4B1.2.

Robbery is an offense enumerated in the commentary to the Guidelines.  The New Mexico robbery statute qualifies as an enumerated crime of violence if its elements align with the generic definition of robbery—if they are the same as, or narrower than, those of the generic offense.  *See Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016).  Generic robbery is defined as the "trespassory taking and carrying away of the personal property of another with the intent to steal it, where that property is taken from the person or presence of the other, and the taking is accomplished by means of force or putting in fear."  *Barela*, 2016 WL 5395275, at *2.  The government broadly asserts that New Mexico robbery adheres to the generic, common-law definition of robbery.  Doc. 8 at 3.  As did Judge Browning, I conclude that New Mexico robbery qualifies as the enumerated offense of robbery in the commentary accompanying § 4B1.2.  I further conclude that there is no realistic probability that the New Mexico courts would interpret robbery in a manner that would sever this correspondence in the future.  Consequently, New

Mexico's robbery statute, NMSA 1978, § 30-16-2, qualifies as an enumerated crime of violence under the Guidelines' commentary, irrespective of the residual clause. *See Contreras v. United States*, Magistrate Judge's Proposed Findings and Recommended Disposition, Doc. 12 at 8-18 in 16-cv-0671 RB/SMV (D.N.M. Dec. 6, 2016) (concluding that New Mexico simple robbery qualifies as a predicate conviction because its elements match those of generic robbery under Application Note 1 to § 4B1.2(a).

For the foregoing separate and alternative reasons, I recommend that the Court conclude that Petitioner's convictions under N.M.S.A. § 30-16-2 are categorically "crimes of violence" under U.S.S.G. § 4B1.2 even without reference to its discarded residual clause. As such, even after *Johnson I* and *II*, Petitioner's robbery convictions were properly used to enhance his sentencing guidelines pursuant to that provision. Therefore, I recommend denying Petitioner's motion on that ground.

## E. CONCLUSION

The Court should hold that the application of *Johnson* to the guidelines does not have retroactive effect under the *Teague* analysis because it is a non-watershed procedural rule. Therefore, I recommend denying Petitioner's motion on that ground.

Should the Motion not be denied for that reason, the Court should consider whether Petitioner's convictions for federal bank robbery and New Mexico robbery remain "crimes of violence" under U.S.S.G. § 4B1.2(a), even after excising its residual clause. Pursuant to the preceding discussion, I recommend concluding that they do and, therefore, that Petitioner's motion be denied on that ground.

**IT IS SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**